321-0579 Clayton A. Coop v. IL Dept of Corrections Section 5 of the Sexually Dangerous Persons Act guarantees, in part, that in any proceedings under the Act, an indigent respondent shall have the right to be represented by counsel. In 2013, the General Assembly amended Section 5 to also specify that the cost of that representation shall be paid by the county in which the proceeding is brought. Section 5 is unambiguous, and under its plain terms, the Circuit Court erred when it concluded that the department, and not the county, was responsible for the cost of Mr. Coop's representation for the proceedings under this Act. In the alternative, if this Court determines that Section 5 is ambiguous, principles of statutory construction make clear that the General Assembly intended to make the county and not the department responsible for those costs. First, as explained in the department's briefs, the 2013 amendment to Section 5 of the Act is unambiguous. It instructs that cost of representation for an indigent individual shall be paid by the county in which the proceeding is brought. By its own terms, Section 5 is not limited to certain proceedings, and thus it is not is appointed as an individual's guardian. Indeed, the sentence immediately preceding the 2013 amendment says that individuals have a right to representation in any proceedings under the Act, not only pre-adjudication proceedings. The Fifth District and the Sharpe decision recently analyzed the 2013 amendment to Section 5 of the Act, and when interpreting that section, found that the 2013 amendment was unambiguous and requires the county to pay for the cost of representation for proceedings under the Act. Either pre or post, right? Correct, yes. The Circuit Court here appeared to rely at least in part on the Probate Act in determining that the department was the proper source of payment as Mr. Koop's guardian. But the Probate Act governs the role of a guardian generally over a ward, and the Act is the more specific statute here, and describes and explains who should pay for the cost of representation for proceedings under the Act. In the alternative, if this Court determines that the 2013 amendment to Section 5 of the Act is ambiguous, then principles of statutory construction show that the General Assembly's intent was to assign responsibility for the cost of representation to the county and not the department. Why doesn't Castman inform our analysis of this question? The Supreme Court in Castman did not specifically analyze Section 5 of the Act as it pertained to the 2013 amendment and cost of representation. The individual in Castman was asking the department to pay for various costs of living expenses while he was on conditional release, but there was not a specific request for payment of the cost of attorney's fees for proceedings under the Act. In fact, however, although the Supreme Court did not specifically analyze the 2013 amendment to Section 5 of the Act, it did discuss the procedures under the Act generally, and even under that general description of the Act that supports the view that the cost of representation should be paid by the county. That's because it describes the Act as having two separate but interrelated proceedings, the commitment proceeding under which the individual is adjudicated to be sexually dangerous, and then the recovery proceeding under which an individual may petition to be placed on conditional release or to be discharged. But in both proceedings, the Court noted that a deprivation of liberty may result from such proceedings generally, and then described that an indigent individual has the right to be represented by counsel in those proceedings, and then, citing Section 5, the Court stated the cost of representation shall be paid by the proceeding in which the county is brought. So again, Castman did not specifically involve an individual's request for cost of representation for proceedings under the Act, but even the Supreme Court's general description supports the view that the county is the responsible source of payment. In the appellate decision that preceded the Supreme Court decision, and I may be wrong, there's some dicta there? Yes. I believe the appellate court decision did make a reference to payment of attorney's fees being the responsibility of the Department. But again, my understanding of the request for payment in the Castman case was that it was a payment for cost of living expenses, to be able to afford housing, and that sort of thing. But that was a pretty broad throw-in by the appellate court, wasn't it? Correct, yes. And was it addressed by the Supreme Court? I can reread the Castman decision and address that question on my rebuttal specifically, but my recollection of the Castman decision is that, again, it was generally discussing the guardian's responsibility under Section 8 of the Act, and including the request for living expenses, but did not specifically rule on a request under Section 5 for cost of representation for proceedings under the Act. Thank you. Another principle of statutory construction that may aid in the Court's analysis should determine that the 2013 Amendment is ambiguous is the presumption that if the General Assembly amends a statute after courts have constructed this, have reviewed and analyzed the statute, there's a presumption that the General Assembly meant to change the law. And in several instances before the 2013 Amendment, courts had held that the Department, as an individual's guardian, was the proper source of payment. Thereafter, the General Assembly, in 2013, amended the Act to include the sentence that the cost of representation for proceedings under the Act shall be paid by the county in which the proceeding is brought. If the Court has no further questions at this time, I can save any other arguments for our panel. Your last argument is basically a General Assembly decision to switch cost sharing? That's correct. That was the General Assembly's determination. Correct. Do we have any indication of how much per year these costs go up to? So, there was no discussion of it, as I can find, in the legislative history, and in this record in particular, there is no information as to that. Any questions? I do not. Thank you. No questions. Thank you. You'll have five minutes to reply. Thank you. Counsel, you may respond. Good morning, Justices. I'm James Riley. I'm counsel for Clayton Coop, the ward for the Court. First of all, I would like to thank the Court for allowing us to present our arguments in person in this historic building, in this historic location, and in this historic city. As an older attorney, I don't think I'll have many opportunities to be in this building again, so I greatly appreciate it. The nature of SBP cases is probably known to all of you, but to briefly, it's under a CF notification, which is criminal felony. And the way these things come before the circuit courts is that a person is assigned with a to proceed as a sexually dependent person. Rather than go through a process of the Sexually Violent Persons Act, which is a totally different statute, they have the alternative to proceed as a sexually dependent person. And if they meet certain criterias, which have amended over the years, but essentially due to their sexual predilections and their risk of harm to the community, they are declared to be a sexually dangerous person and assigned to the Illinois Department of Corrections. They're assigned, unlike SBP, to the Big Muddy Program in downstate Illinois, and they go through a process of rehabilitation, and that's really not before the Court. What is before the Court is Section 5. Section 5, admittedly, was amended in 2013. The circuit court, in its finding, said, we have two competing districts, second in the Fifth District, none in the Third District. The Third District, in 2005, found that, as in the strange side of all those cases, that as the guardian, Illinois Department of Corrections was responsible for their work, just like under the Probate Act. Now, the common law record, it's lengthy. It goes from 2088 to 2023, so you can see this process is certainly not overnight. It's a long series of alleged recovery and those various processes that go on, and the amount, while the length of the case is at issue, the amount we're talking about is, you heard the term de minimis in the last argument, it's $6,356.25 in attorneys' fees. But it's important. It's very important with this issue as to whether or not we should be segregating attorneys' fees from the general responsibilities of the guardian, who is the Illinois Department of Corrections. Now, the Castman case that was decided August 19, 21, very shortly before the Court made the decision in our case, which I believe was October of that same year, that case held that the requirements of the guardian was to pay for all of the necessary expenses. So what is the purpose of the act then, the amendment? Of the amendment? Yeah. I say it clarifies if my appendix to my brief showed exactly what they were trying to do. In that, it stated we need to get this word psychiatrist out of the statute because the statute for SDP says evaluations are done by psychiatrists. As said in my appendix, they said there's not enough psychiatrists that are qualified to do these kind of things. Change that to psychologists. There also were a couple other minor things that in that statement where the act was presented before the Court, but there was no, as counsel indicated, there was no pre-adjudication analysis of how things should be done and the post-adjudication. And it makes perfect sense that pre-adjudication, the sexually dangerous alleged person, is not a ward of the Illinois Department of Correction. A pre-adjudication person has a right to counsel. And this is going through the Supreme Court decision. Post-adjudication. Pardon me? But so does a post-adjudication. In the Recovery Act, they have a right to counsel as well. Sure they have a right to counsel, but it goes clearly as to how could you possibly order the IDOC to pay for it when they're not adjudicated yet? That's the whole thing why the IDOC is required to pay. Because post-adjudication, all of the terms of Section 8, all of the terms of what a sexually dangerous person, they're set. Section 5 just talks about the right to counsel and absolutely have a right to counsel. Who pays for it? The county does because they're the ones that bring the case. And until that person is adjudicated, it's on the county. It's after that, it's on the IDOC. So there is a conceptual distinction that was brought up by the trial court in the case that was rejected. But also that same appellate court ruling said, I think in the very last paragraph, they said, well, they have made a real mess, the legislature, maybe they should address this issue. Because that last paragraph talks about impoverished counties being now required to pay attorney's fees, where before it was all on the IDOC. It's all of these continual non-funded mandates kind of thing, putting it off on counties to pay attorney's fees. But counsel, what authority do we have to rewrite this statute? The statute says it shall be paid by the county in which the proceedings are brought. And it makes no distinction between recovery act, recovery cases, or pre-adjudication cases. It does, in the sense when you read carefully the section, as to what it is referring to. It's one of the initial paragraphs. And it's bringing the case. You're right that it does not artfully say that this changes once there is guardianship established. But it does not say that, but neither does it say that all of these other expenses that they're liable for change. So if you take this to its ultimate conclusion, the effect of applying this applies to all attorney's fees. Suggestions before this. In this 15-year process here, the attorney's fees should all be taken out of the responsibilities of the ward, or of the guardian. Every single attorney's fees. Every time it's brought before the court. And I think that's totally an irrational looking at the way this case is done. And talking about irrationality brings me to something that's addressed both in the appellant's brief and reply brief. Is this notion that the General Assembly is to take notice and to assume that they know everything that went on before. And I think not only you all as justices, myself as an attorney, but the general population would say that's a bunch of malarkey. Does the General Assembly get to be irrational? Don't they have the right to be irrational? They do. They do. I'm saying what is irrational is a presumption. Is a presumption that they are completely rational and have examined everything before they make their decisions. No, absolutely. I do. You do. Everyone has a right to be irrational. And I can say personally, I am from time to time. The Wilcoxon case in the third district all the way back to 2005 set the standard of how this was done. And the string side of cases that both counsel and I always have reiterated the same thing. This is what a guardian does, paying all these things, blah, blah, blah. In recovery petitions, in conditional discharge. I think Casman's. That was an 05 case? That's the 05 case. So these things go back. From what county? Third district. It wasn't LaSalle. I can find it in a minute if you want me to find that for you, Judge. Wilcoxon was an appeal. Now, what is the modified? Fulton County. Yes. Fulton County. Under Fulton County. And now that you brought that to my attention, I just want to quote that opinion, Your Honor. There's no dispute about the defendant's ability to pay attorney's fees. Accordingly, either Fulton County or the state has to pay the fees. The court's judgment is reasonable in light of Section 8, which establishes the director of the IDOC as a legal guardian of a person committed under the Act. Under this provision, the state, not the county, has guardianship responsibilities for Wilkinson's. In the instance setting, we believe that a person's legal guardian is the correct source of payment for the person's essential expenses. The expenses incurred by Wilcoxon's were essential because he needed an attorney to represent him during the discharge of proceedings. Mr. Riley, isn't the provision in the Act more specific than the general provisions you point to in the probate Act? And shouldn't the specific control the general if there is ambiguity about it? I would agree that the statute is specific under Section 5. However, I think that, and I want to go to the specific language. The cost of a representation by the counsel for an indigent respondent shall be paid by the county in which the proceeding is brought at the hearing on the petition, which shall be competent to introduce evidence of the commission by the respondent of any number of crimes together with whatever punishment, if any, were afflicted. So yes, it does say that. And as I said, it does not say only in the initial phase. But it's in conflict with Section 8 and subsequent sections that talk about the responsibility as guardian for the Department of Corrections being responsible. And I suggest, I see as my time is winding down, that arguably that is irrational to say you have to pay for food, you have to pay for lodging, you have to pay for everything under the sun, but not the attorney who's responsible for representing them. Push that all off on the counties. I think that's inappropriate. And I suggest that the only remand should be to send it back to the circuit court for the attorney's fees amount to be amended beyond the present building. But back to Justice Albrecht's question, and somewhat along with mine, you may say that it's irrational, but cannot the General Assembly be irrational? I mean, what do we do, back to Justice Albrecht's question, as Third Branch government, what do we do when there's an arguable irrationality in an amendment to an act? Well, I think the Supreme Court addressed that issue to some extent when they, in their analysis, they talked about two parts. They talked about the pre-adjudication phase and the post-adjudication phase. So this specific issue of attorney's fees conceivably was not addressed. But to me, I think the Supreme Court was certainly making the dichotomy between what happens in the pre-adjudication phase and the post-adjudication phase. Thank you. Thank you, counsel, for your argument in this matter. Thank you. You may reply, counsel. If you'll just wait a moment. Sure. You may proceed. Thank you. Your Honor, first to address your question about Castman and the discussion of fees. In the Supreme Court's discussion of the appellate court's decision, it noted, again, the specific requests were for financial support for things like monthly living expenses, including rent, therapy, utilities, those sorts of things. And then in summarizing the appellate court's decision, the Supreme Court noted that the appellate court, looking to other appellate court decisions, held that the director may be required to pay for a sexually dangerous person's necessary expenses, citing cases like Carter, Downs, and Wilcoxon that all predated the 2013 amendment. Then the Supreme Court, in the rest of its decision, just generally discusses the expenses as financial assistance, although, again, in its general description of the proceedings under the Act, it notes that there are two proceedings, pre-adjudication, or before the person's adjudicated, and then the recovery proceedings. But in both, they are entitled to representation. Correct, yes, they're entitled to representation. And then citing Section 5 notes that those fees are to be paid by the county in which the proceeding is brought. Mr. Riley was discussing Section 8, and the appointment of the director of the department as an individual's guardian, and thus under the guardianship role, having required to support the individual provide certain necessary expenses. However, the General Assembly did choose to carve out the cost of representation from those expenses, and specified in Section 5 that the cost of those representations shall be paid by the county. They're not just expenses, general expenses. They carved an exception out of the obligation for general. Correct, yes, carved an exception out of the general requirement that they may need to provide certain support to the individual. Instead, when it comes to the cost of representation for proceedings under the Act, those costs, those specific costs are to be paid by the county in which the proceedings take place. Regardless of whether they're pre- or post-adjudication. Correct, and looking again at the specific language of Section 5 of the Act, the first sentence says the respondent in any proceedings, any proceedings, it does not specify pre-adjudication or post-adjudication, the respondent in any proceedings under this Act shall have the right to demand a trial by jury and to be represented by counsel. The immediate next sentence specifies the cost of representation by counsel for an indigent respondent shall be paid by the county in which the proceeding is brought. So that part of the second sentence, the proceedings, should be understood in the context of the first sentence which is any proceedings. So for any proceedings under the Act, the cost of representation for an indigent individual shall be paid by the county in which the proceeding is brought. And again, to whatever extent the director is appointed as an individual's guardian under the Act, that appointment is made pursuant to Section 8 of the Sexually Dangerous Persons Act. And so the Probate Act, while it may govern the role of a guardian generally over a ward, this Court should be looking to this specific Act, the Sexually Dangerous Persons Act, to determine who should pay for the cost of representation here in these proceedings. And the Act answers that question specifically in Section 5 with the 2013 amendment to that section. So you're saying that's a permissive exercise of the General Assembly to do that in an amendment. But the Probate Act is a, quote, general act. Correct. Governing guardians in the section of the Probate Act. But that they are able to be more specific and make different requirements for different types of guardians? Correct. That's absolutely within the General Assembly's purview. And I would also just note, again, to whatever extent this Court determines that the 2013 amendment to Section 5 is ambiguous, the legislative history is relatively limited and in the legislative history there is no discussion or note that this was meant to only apply to pre-adjudication proceedings. Is Mr. Riley correct that really much of the focus of that amendment was to expand the licensed professionals that were allowed to make opinions? I don't even know if I would say most of the thrust. It's really just a couple of quick comments that, one, they're seeking to expand the pool of available individuals to conduct these assessments. And then, secondly, it's more or less mirroring the language of the amendment, which is that... If I may finish. Oh, please. I've never heard... I've not heard this bell that we've had. I know it's you. I don't know why it's you. Is it just new? Yeah, I don't know why it's you. Well, please finish. Well, there's a comment at first that this is meant to expand the pool of individuals who may be qualified to conduct these assessments. And then the second part states that it seeks to state that the cost of representation shall be paid by the county in which the proceeding takes place. So, for those reasons in the state in our brief, we ask that this court vacate the circuit court's decision. Thank you. Thank you, counsel. Thank you, counsel, both for your arguments in this matter this morning. It will be taken under advisement and a written disposition shall issue. The court will stand in recess until the afternoon